IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ONYEGBULE S. OKONKO § <br> ADLINE U. ONWUCHEKWA § <br> SAMUEL O. ONYEGBULE § <br> ONYEGBULE S. OKONKO AND § <br> ADLINE U. ONWUCHEKWA § <br> *individually & as Next Friend of* § <br> PATIENCE C. ONYEGBULE § <br> PROMISE C. ONYEGBULE & § <br> PRIESTON C. ONYEGBULE § <br> (Minor Children) § <br> Plaintiffs, § <br> § <br> V. § <br> § <br> QATAR AIRWAYS Q. C. S. C. § <br> Defendant. § | | United States Courts <br> Southern District of Texas <br> FILED <br><br> DEC 30 2025 <br><br> Nathan Ochsner, Clerk of Court <br><br><br> CIVIL ACTION NO. _____ |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs, by and through their attorneys, on behalf of themselves individually and as next friend of their minor children, based on personal knowledge with respect to their own circumstances and based upon information and belief pursuant to the investigation of their counsel(s) as to all other allegations, bring this breach of contract and damages action against Qatar Airways Group Q.C.S.C., (hereinafter Qatar), under the Montreal Convention for violating their own Contract of Carriage (COF), when Qatar's aircraft took off before schedule and denied plaintiffs boarding on the second leg of their journey despite holding valid boarding passes. Qatar's subsequent ill treatment of Plaintiffs after their error amount to a breach of contract, deficiency of service and unfair trade practices. Qatar's offensive actions and/or inaction caused Plaintiffs significant mental agony, hardship, financial loss, physical stress and trauma, mental anguish and emotional distress when Qatar, despite the breach, failed to provide Plaintiffs any

compensation that include alternate flight within 24 hours, refund of fares or offering credits for significantly changed flights, hotel accommodation, meal vouchers, etc.

## A. PARTIES

1. Plaintiff, Onyegbule Samuel Okonko, is an individual, a citizen of the United States and at all times material to the within complaint, a resident of Harris County, Texas.

2. Plaintiff, Adline Uzoaru Onwuchekwa is an individual, a citizen of the United States and at all times material to the within complaint, a resident of Harris County, Texas, and the spouse of Plaintiff, Onyegbule Samuel Okonko.

3. Plaintiff, Samuel Onyedikachi Onyegbule is an individual, a citizen of the United States and at all times material to the within complaint, a resident of Harris County, Texas, and the son of Plaintiffs Onyegbule Samuel Okonko and Adline Uzoaru Onwuchekwa.

4. Plaintiffs Patience Chidindu Onyegbule, Promise Chioma Mercedes Onyegbule, and Prieston Chinemerem Onyegbule are Minor, same residence, children of Plaintiffs Onyegbule Samuel Okonko and Adline Uzoaru Onwuchekwa.

5. Defendant, Qatar Airways Group Q.C.S.C., (hereinafter Qatar), is a foreign corporation owned by the State of Qatar, with its headquarters and/or principle place of business located at Qatar Airways Towers 1, Airport Road, Doha, Qatar.

## B. JURISDICTION

6. This Court has subject matter jurisdiction in that there is complete diversity of citizenship based on 28 U.S.C. § 1332(a)(2) because the suit is between citizens of a U.S. state and citizens/subjects of a foreign state and the amount in controversy exceeds $75,000.00 excluding interest and costs.

7. Jurisdiction in this matter also exist under 28 U.S.C § 1331 under federal question in that the rights and obligations of the parties are governed by a Federal Treaty, the Convention for the Unification of Certain Rules for International Carriage by Air done at Montreal on May 28, 1999, commonly known as "The Montreal Convention.

8. This Court has jurisdiction pursuant to U.S.C. § 1605(a)(2) of the Foreign Sovereign Immunities Act in that this action is based upon Defendant Qatar's commercial activity carried on in the United States.

9. This Court has personal jurisdiction over Defendant, Qatar, pursuant to Fed. R. Civ. P. 4(k)(2) because this matter arises under federal law, that is, a multilateral treaty obligation to which the United States is a signatory, and Qatar, a foreign entity with its principal place of business in Doha Qatar, is not subject to jurisdiction in any state courts of general jurisdiction. More so, Qatar transacts business within the State of Texas and operates commercial flights within, to and from the United States, including George Bush International Airport (hereinafter "IAH") in Houston and/or maintains offices in the United States, thereby fully satisfying Article 33(2) of The Montreal Convention.

10. Exercise of personal jurisdiction over Qatar under Fed. R. Civ. P. 4(k)(2) is consistent with the Due Process Clause of the Fifth Amendment of the United States Constitution because Qatar has sufficient minimum contact with the United States as a whole in that Qatar purposefully avails itself of the American market by:

- Operating in the United States under the authority of a Foreign Air Carrier Permit (as amended) issued by the United States Department of Transportation;
- Operating regular commercial flights to and from international airports within this District, and maintain continuous and systematic presence here.

- Transporting thousands of passengers weekly aboard its own aircraft to and from the United States in general, and the State of Texas. Qatar operates flights to approximately 170 destinations on six continents, including approximately fifteen daily flights to eleven destinations in the United States;

- Transacting business in this District that include but are not limited to, the purchase of aviation fuel, passenger meals, and other flight related expenditures totaling in the millions of dollars annually;

- Employing more than 270 employees based in the United States;

- Engaging in direct advertisement and sales of airline tickets and online booking to United States citizens and residents in the United States and the State of Texas;

- Owning and/or leasing real property in the United States and the State of Texas;

- Transacting business in the United States and the State of Texas generating millions of dollars annually; and

- At all times relevant hereto, Qatar was and is a commercial air carrier receiving federal assistance as it operates according to the rules and regulations of the Federal Aviation Agency and the Department of Transportation, Department of Homeland security, and works in compliance with various other federal agencies.

- Plaintiffs' complaint arise directly from Defendant's business activities, including the direct sales of ticket and provision of air transport services within Texas and this District.

### C. VENUE

11. Venue is proper in this district under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this District. Specifically:

- Plaintiffs purchased Qatar tickets while residing in this District;

- The flight giving rise to this complaint originated and was scheduled to be concluded at IAH in Houston, Texas, located within this District.

12. Venue is proper in this District because Qatar is a common carrier of passengers by air, that purposefully availed itself of the privilege of conducting business within Texas.

13. Venue is proper in this district under under 28 U.S.C. §1391(b)(3) because Qatar is subject to the Court's personal jurisdiction with respect to this action.

### D. CONDITIONS PRECEDENT

14. All conditions precedent to the institution of this complaint have been performed or have occurred.

### E. STATEMENT OF FACTS

15. At all times relevant, Qatar was and continue to be, a common air carrier of passengers for hire, soliciting patronage of the American traveling public and advertising flight schedules for routes, departure and arrival times, and rates and flying on regular schedules over designated routes that include the international route travelled by Plaintiffs.

16. On April 14, 2023, Plaintiff, Onyegbule Samuel Okonko reserved and paid $14,742.30 for round trip tickets for all Plaintiffs (6 total) to fly outbound from Houston IAH at 17:30 on Thursday, December 14, 2023 through Doha, Qatar to Abuja, Nigeria on Saturday, December 16, 2023 at 9.45 a.m. on Qatar flight 714 and 1433 and return inbound from Abuja Nigeria on January 4, 2024 at 19:00 through Doha Qatar to Houston IAH on January 5, 2024 at 15.30 on Qatar flight 1434 and 713 (The Contract).

17. Qatar issued boarding passes to all Plaintiffs based on the reservation evidencing the transaction with the airline.

18. Plaintiffs successfully travelled for the first leg of the contracted journey on December 14, 2023 but were denied boarding on January 4, 2024 for the second leg of the journey despite holding valid boarding passes.

19. Plaintiffs arrived Nnamdi Azikiwe Airport Abuja, Nigeria several hours before 19:00 (7.00 P.M) but were told that the flight departed in the morning of the same day.

20. Qatar made significant changes to Plaintiffs' flight schedule but failed to notify Plaintiffs of the changes such that Plaintiffs arrived the airport according to the agreed schedule and discovered that the flight already departed early that morning without Plaintiffs. Qatar breached the parties' agreement and Qatar's breach resulted in severe injuries to Plaintiffs.

21. Qatar's staff treatment of Plaintiffs after Qatar's breach was lacking and highly deficient. Plaintiffs were humiliated when Qatar paid no attention to Plaintiffs when Plaintiffs complained that they did not receive notice that the flight was leaving earlier than scheduled. The staff saw that Plaintiffs were stranded and refused and/or failed to provide plaintiffs with alternate flight within 24 hours, refused to refund funds or provide credit to Plaintiffs, refused to offer hotel accommodation and any form of compensation.

22. Plaintiffs were forced to immediately purchase United Airlines flight confirmation No. E918XM at $14,453.40 for a one way return travel from Abuja, Nigeria through Frankfurt, DE to Houston IAH and stayed in a hotel until close to the flight's departure time.

23. The above mentioned premises/grounds prove that Plaintiffs were involved in "International Transportation" within the meaning of Article 1 of the Montreal Convention.

## F. CAUSE(S) OF ACTION

24. **COUNT 1 - BREACH OF CONTRACT**

　　a.　Valid Contract - Plaintiffs and Qatar have a legally binding agreement in the form of the airline ticket purchased by Plaintiffs showing the existence of an offer by Qatar, acceptance by plaintiffs' and the existence of consideration, mutual assent and the intent to be bound. Qatar owed contractual duties to Plaintiffs as detailed on its "Contract of Carriage", (hereinafter COC) to board the aircraft with their valid boarding passes and to rebook Plaintiffs within 24 hours of Qatar's error and offer Plaintiffs compensation as explicitly promised in its own contract.

　　b.　Plaintiffs' Performance - Plaintiffs fully performed their obligations under the contract by paying for the tickets, obtaining boarding passes and attempting to board the scheduled flights in time.

　　c.　Defendant's Breach - Qatar failed to perform its promised duties and/or refused to perform its duties under the contract when Qatar negligently and unilaterally changed the itinerary for Plaintiffs' flight without notice to Plaintiffs and refused to offer Plaintiffs any compensation.

c.1. Qatar violated its own explicit promises in its COC, when the airline scheduled a flight for plaintiffs to depart from Abuja Nigeria to return to Houston, Texas that left several hours before plaintiffs were scheduled to get on that flight.

c.2. Qatar breached the contract that promised and guaranteed Plaintiffs boarding with paid and valid boarding passes at the time stated thereon.

c.3. Qatar violated its promises of compensation to Plaintiffs due to Qatar's error as outlined in its contract.

d. Resulting Damages - In addition to other damages directly caused by defendant's breach, Plaintiffs suffered actual harm in the form of financial loss for hotel reservation and extra costs for booking of an emergency one way ticket to return home, etc,.

d.1 Plaintiffs now stranded, in a desperate effort to return home after Qatar's breach and no assistance, were forced to pay for a hotel stay and to purchase return tickets from United Airlines for a one way trip to return home, that cost approximately the purchase price of Plaintiffs' round trip tickets purchased from Qatar way ahead of time in April of 2023.

e. Qatar's breach was the cause- in- fact and proximate cause of Plaintiffs' injuries and loss.

25 **COUNT 2 - NEGLIGENCE**

a. Qatar owe a duty of care to Plaintiffs and other passengers to provide safe and reliable transportation.

b. Qatar breached its duty of care to Plaintiffs when it failed to meet the standard of care expected in the industry when it failed to provide reliable transportation to paid customers with valid boarding passes. Qatar caused the flight to leave significantly earlier than the scheduled time, without notice to Plaintiffs, and offered Plaintiffs' no form of service or compensation afterwards.

c. Qatar was negligent in its unilateral changes to the flight's departure time and in its failure to notify Plaintiffs of the change in itinerary.

d. Qatar's breach of the said duty directly caused Plaintiffs' injury and loss when Plaintiffs suffered financial loss and hardship, significant mental agony, physical stress and trauma, mental anguish and emotional distress when Qatar, despite the breach, failed to provide Plaintiffs any compensation that include alternate flight within 24 hours, refund of fares or offering credits for significantly changed flights, hotel accommodation, meal vouchers, etc.

e. Plaintiffs suffered actual damages due to Qatar's negligence. Plaintiffs injuries include, pain and suffering, humiliation, inconvenience, physical stress, mental agony, mental anguish and trauma.

## G. DAMAGES

26. The damages suffered by Plaintiffs were a direct and proximate result of Defendant's negligence, carelessness, and a breach of duty owed Plaintiffs by Qatar.

## H. ATTORNEY'S FEES

27. Plaintiffs make request for all costs and reasonable and necessary attorney's fees incurred by or on behalf of Plaintiffs herein, including all fees necessary in the event of an appeal of this case, as the Court deems equitable and just, as provided by law.

## I. PRAYER

Wherefore, Plaintiffs request that defendant be summoned to appear and answer and that on final trial, judgment be granted against defendant, awarding Plaintiffs the following:

a. Actual damages,

b. Compensatory damages including damages for breach of contract, emotional distress, and negligence and for intentional infliction of emotional distress.

c. Pre and post judgment interest, in the maximum amount allowed by law,

d. All reasonable and necessary Attorney's fees incurred by or on behalf of Plaintiffs as permitted by law;

e. All reasonable and necessary costs incurred in pursuit of this suit, and

f. Such other and further legal and equitable relief to which plaintiffs may be justly entitled.

## JURY DEMAND

Plaintiffs hereby demand jury trial on all issues, claims, actions and defenses in this case.

Respectfully submitted,

ODUNZE NWOGU LAW GROUP, P.C.

By: */s/ Nwadi Nwogu*
Nwadi Nwogu
Texas Bar. No. 24074826
Southern District ID No. 1125432
Nwadi@onlawgroup.com
Meka Odunze
Texas Bar No. 24004844
Southern district ID No. 23127
Meka.Odunze@onlawgroup.com
6000 Savoy Drive, Suite 302
Houston, Texas 77036
Tel: (713) 334-8080
Fax: (713) 334-3533

ATTORNEYS FOR PLAINTIFFS